The final case today is Augustine v. Department of Veterans Administration. This case will feature an argument by telephone. Can you let me know when you have them on the phone? Hello? Hello? Hello? Mr. Wayne? Mr. Chang? Yes. Good morning. This is the Federal Circuit. We are online with the court, so you're free to go. Mr. Chang, this is Judge Rader. Can you hear me? Yes. With me on the bench are Judge Dike and Judge Clevenger, and Mr. Todar is here representing the Department of Veterans Administration. In just a moment, I will acknowledge you to begin your argument. I'd like to first ask you, however, to proceed somewhat more slowly than you might otherwise. If you would be so kind as to pause after each sentence so that the court, if necessary, can interrupt and ask you questions. This kind of proceeding is going to require us to move a little more slowly than we might otherwise. The court will take that into consideration with respect to timing. Are you ready to proceed, Mr. Chang? Yes. We can hear you fine, Mr. Todar. Can you hear Mr. Chang? Yes, Your Honor. Then if you would like to proceed, you may, Mr. Chang. Again, I ask you to pause and allow the court to ask questions. Yes. Please proceed. Thank you. Good morning. First, I would like to express my hearty thanks to the court and the reporting counsel for accommodating my situation, and my special thanks to the clerk for making this telephonic arrangement possible. The central issue here today is a legal issue, not a factual issue. That deserves to be renewed by this court. The AKA confused the entitlement of the delivery issue because under text 3330-CT, once a party is a prepared party, that very party has to reach an opportunity, expense, and cost for that party. Unlike most other federal statutes that only make the prepared party out, stuck to further discretion in the system. Just as that other case, that's why the AKA, in its own proceeding, confused the entitlement with eligibility. Furthermore, the AKA and the ACA already admitted that Kishinev Agustin is expressed eligible and is a prepared party under section 3330-DB. Needless to say, no agency has cited any cases or stats to support the position that since Kishinev failed to prove that her current efforts have contributed to the stroke by agency, or is petitioned for review by the board, not only the entire source, but also the entire cost incurred. Therefore, costs are irrelevant. The board has two grounds, two reasons why they say that you failed to show a reasonable fee under their interpretation of the statute. The first was that you did not enter your notice of appearance until somewhat late in the game. And secondly, they say that you failed to show that the attorney's efforts contributed to her success on appeal. So the board seems to think that in order for a fee to be reasonable, it has to be a fee large piece of which was earned earlier than it was in terms of an appearance notice. And secondly, that it was obtained that the services contributed to success. And I understand you to be saying both of those standards are wrong as a matter of law, that it shouldn't make a difference when you enter your appearance if you actually gave legal advice. And secondly, the statute should not be interpreted to require the requester of the fees to prove that their efforts produced the victory. Instead, I understand you to say the correct interpretation of whether a fee is reasonable is whether or not the efforts of the attorney were undertaken in pursuit of defense of the client's case, and that the amount of time spent in so doing was not itself unreasonable. If you follow me, do I understand your argument? Yes. If I may, I just want to add a few words. The notice of appearance was really technical in the sense that... ...that the petition was filed by the agency. No, actually I was retained in June 2000. Yes. Yes, that's what I said. Yes. Is there a record cite to that? I show your first... There's a retainer's statement there. Let me double check here. Okay. Yeah, actually in March, I'm sorry. March 1701. March 1701, yes. Yes, I was retained at that time. After the initial decision was issued by the AJA. Yeah. And at that time, the petition for review was already filed. Yes. And my client also filed a cross-petition. And then in response to the cross-petition, agency and OPM also filed twice the cross-petition. You didn't. She felt that she was unable to handle even the further reply by the agency. And in the meantime, the agency also provided some kind of settlement. Now, Mr. Chang, you did not, this is Judge Rader, you did not file your notice of appearance, however, until August. Is that correct? That's correct. Right the day before the mediation, as I recall. Correct. Well, I'm unaware of research, and I'm unaware of any regulation of the MSPB that says when it is you're required to file a notice of appearance or whether your entitlement to attorney's fees under any standard depends on when you filed your notice of appearance. I don't know what my colleagues will say, but from my perspective, it's just a canard, the idea that you wouldn't be entitled to fees because of filing a notice of appearance. I don't know that you ever need to file a notice of appearance. We don't have that issue in front of us. That's not my understanding. Now, can I ask a question, sir, about the agency makes its motion to dismiss. It withdraws its petition for review in September of 2001, September 7. That's at A209. Then the agency moves to dismiss in November, November 11, 2001, but it's unwilling to have the original decision of the AJ reinstated. Is that correct? Correct. And so it wants to dismiss its appeal, but it does not want to reinstate the victory for your client, which has been vacated by the board. Yes. And so then we go a nice period of two years. We go to September of 2003, when the board finally grants the government's motion to dismiss and makes clear that the full board is reinstating your client's victory. In response to August 7th. In response to a piece of paper that you filed complaining that it was no good to simply dismiss the appeal without reinstating your client's victory. Correct. And so I just want a confirmation from you that until September 2203, your client was still in jeopardy of not being able to reclaim her victory in front of the AJ because the agency was refusing to allow that to happen. Not only that, my client was forced to resign when the initial decision was vacated and negotiations settled failed and they just set off the pressure and then she was forced to resign. Do you know there's any explanation why it took from November of 01 to September of 03 for the board to finally clean this case up? I do not know because I submitted a request for a decision. I think five, according to the record. We submitted a request for a decision. We thought it might be a political issue, but it's just my personal speculation because in order to invalidate the run of an outstanding scholar program, I think it would create a huge problem among the federal agencies. And that's back created through the consent decree. Thank you. Mr. Chang, you have four minutes left on the clock here. Do you want to save some time for rebuttal? Okay. That's my one for you. In response to the case, as needed under the then circumstances, particularly in light of the fact that it just covered that the initial decision was vacated and the board characterized arguments by agency and OPM as strong and even indicated that this decision may not even survive and therefore it will reopen for supplemental argument and briefing, which is there and that in jeopardy. And I was forced to do additional work to make sure my client's interest were reinstated and protected. And another thing I want to point out is AHA somehow tried to liken our efforts as a capitalist, which is really not appropriate because our complaints have never been mooted as a result of any legislative efforts by us or through us. And here there's a quasi-judicially sanctioned order that changed the relationship ultimately, unlike the capitalist theory. So I don't think that likening is appropriate here. Well, Judge Reed is the judge that presided on the merits of your client's case in the beginning. Isn't that correct? That's quite incorrect. Is Judge Reed the administrative judge that ruled in your client's favor way back in the 14th of March, 2000? Correct. Correct. But even so, you still are asking us to, if you prevail here on a remand, you're asking us to remove Judge Reed from the case? Correct. May come back on ethical basis because from all the cases I've read, it has been determined then that the fine of the fact is the best person to evaluate the reasonableness of the fee. Well, I don't follow. It seems to me that your argument with Judge Reed is that Judge Reed applied an incorrect legal standard in deciding entitlement to fees. If we were to disagree and to agree with you that the wrong legal standard was applied, I don't see that there's any evidence that Judge Reed would be biased or otherwise not competent to decide quantum. Well, if I may, if we review the history of the case, there were two initial decisions, there were two OSDs. In each case, Judge Reed tried to use a different statute, like the Uniform Service Employment and Reemployment Rights Act has nothing to do with this case, in order to exercise its discretionary power to deny its entitlement. And then at one point he even tried to capitalize me as a non-lawyer, California. The history is enough that he has created enough transactional costs and social weight since 2003. If we allow him to come back in another three years, it's really unfortunate and unfair to my client. I'm sure any competent person, because the statement is well-documented, to the minute any person who looks at the statement can come up with a reasonable calculation based on the established case law. I don't think we need Judge Reed to come back to evaluate the case. Mr. Chang, your time has expired. Let's hear from Mr. Todar for the Department of Veterans Affairs, and we'll give you a few minutes of rebuttal when he finishes. Thank you. Mr. Todar? May it please the Court. We disagree with the premise that this case is being reviewed pursuant to whether the proper legal standards was applied. Could I just interrupt you for a second? Mr. Chang, can you hear Mr. Todar? Matter of fact, it's a little bit too low for me. I will attempt to speak up. Thank you. The question in the appeal is not whether the MSPB applied the prevailing party standard. The administrative judge found that Ms. Augustine was the prevailing party. The only question is whether the finding that in this case the reasonable amount of attorney speech, which are required under the EOA in this case, is not at all. That decision was within the administrative judge's discretion as committed both by this Court's process. What legal standard did the AJA use to decide reasonableness? It found that the fees that were incurred were connected to the relief obtained in the case and found that they were not. Let me give you a hypothetical. Let's suppose that your lawyer represents somebody who is successful at the district court level and the other party appeals. In anticipation of having to brief the appeal, you spend time writing an opposition brief. Then the party decides to dismiss the appeal and to leave the original judgment in place. And this is a situation in which the statute provides for attorney's fees to the prevailing party. Is your contention that the work that was done on the appeal is not compensable? No, we don't think that that would be a good rule of law, and we also don't think that that's what happened here. Okay, so you agree that under my hypothetical that attorney's fees would be recoverable. I can't speak to every fact pattern that may arise, but for the purposes of this procedure, yes. Even though there was no showing that the brief that was prepared by the appellant had any effect on the decision of the appellee to quit? We're not saying that the work performed in the appeal, which should be reviewed following a Buckhannon catalyst theory analysis. That's not what we're saying. We're saying that given the opportunity after the show cause order to demonstrate, to meet his burden, for Ms. Augustine to meet her burden. I want to stick with Judge Dyke's hypothetical. In the attorney's efforts in Judge Dyke's hypothetical, there's no showing that that contributed to the success of the appeal. In Judge Dyke's hypothetical, a brief was written. I'll accept that. A brief was written, and after the brief was filed, the appellee withdrew and said, We give up. In this case, the brief, the only brief that was filed was— I don't want to talk about this case. I want to talk about a situation in which legal efforts were undertaken in defense of a client, and it turned out that that effort was unnecessary because the other party quit. In a case where the statute provides that attorney's fees shall be required, then if the fees were reasonable, as found by the judge in that situation, the client is the prevailing party, and therefore— They win, even though the attorney's efforts did not— there was no showing that the attorney's efforts contributed to the success on appeal. If the party was prevailing at the district court level in the hypothetical, yes. In our case, the party prevailed at the district court level, if you will. By analogy, yes. And there was an appeal taken by the loser, the agency. And legal efforts were undertaken, briefing, consulting, talking, right? That is actually an issue of some dispute. Well, that might be whether or not some of those conferences dealt with the appeal as opposed to dealt with something else can be dealt with later on a quantum hearing. But the point is that the A.J. here said there is absolutely no entitlement to any fee at all because there was no showing that the attorney's efforts contributed to the success. That was part of what the administrative judge said. Okay. And what the other part was, they said you didn't file your notice of appearance until late. Well, that is part of the analysis. Is there anything else? Yes, Your Honor. What? The finding that most of the services performed actually relate to separate claims, equal opportunity claims. Okay, fine. That's that quantum. He threw them all out. Yes, he did. He may have—the A.J. may have corrected. Let's assume that Mr. Weil-Chang was giving her some advice about how to get a driver's license. Of course, he can't collect for that. He knows he can't collect for that. But what was the rationale for throwing out the work that was related to the appeal? With respect to the work that was performed on the appeal? Yes. And we agree that if the court finds that there was— We went to mediation. The agency said we'd like to mediate. He prepared for mediation. He went to mediation. He sat in a room and billed hours. Yes. That time was denied. The court also—the administrative judge also— He said that time was denied. Yes, it was. Because? The administrative judge found that in reviewing even that time, that the finding in the decision was even that time related to claims outside of the— No, no, no, no, no. The mediation wasn't about something not having to do with the case. It was within the case, yes. Sure. So the A.J. threw out the hours that Mr. Wildshank spent in the mediation room. Why? In this case, there were two reasons. One was that there was the reasoning that it wasn't connected to the relief ultimately obtained. We're not defending that as a rationale. There's also a finding that even those hours, even though they were spent— Wait, wait, wait. So you're not defending the rationale. You're conceding error. We are not conceding error in that the theory that if it's a catalyst, you wouldn't win if it was only on the appeal. We don't think that that's a correct— The contributing to success on appeal, proving that you contributed to success, you're going to give up that, right? That is not our position. Our position is that they have to show that the hours that were expended were in pursuit of the appeal and that they were reasonably tied to the success obtained in the appeal. If that's your true and honest feeling, sir, why didn't you come in here and confess error on the legal standard and ask voluntarily for a remand for a hearing on quantum so that somebody could go through Mr. Chang's legal hours and say, okay, were you talking to her about her driver's license today or were you talking to her about her appeal? The administrative judge gave him that opportunity. He filed the show cause order and— Fine, but then the administrative judge threw out the time that you've now conceded he's entitled to be paid for. You have conceded that the hours in mediation at least are compensable under the statute. Will you concede that right now? There are two reasons why we're not conceding that. Will you concede that right now? No, there are two reasons why we're not conceding. Assuming the mediation was about the appeal on the merits. That is the assumption that— Okay, I'm assuming that some of the time in the mediation hearing was dedicated to the question of the merits of her removal, which she won. Okay? Will you concede he's entitled to be paid for that? We can't make that assumption. Therefore, I'm not in a position to make that assumption. I'm asking you on a hypothetical. As a hypothetical matter, if in Judge Dyke's hypothetical, if an attorney represented somebody— Assuming that there was some time spent, that Mr. Chang can establish that some of his hours were actually spent researching or talking, advising her about the merits of the appeal that had been taken against her. He's entitled to be compensated for that, correct? As a hypothetical matter, an attorney would be entitled to that. There are specific reasons in this case why he's not entitled to that. Your position in oral argument today, sir, is about 180 degrees away from your red brief. In your red brief, you embraced this, I'm sorry, nutty standard that you sort of have to prove that your legal effort is what caused the government to cave in. There's not a hint in your brief, not a hint in your brief anywhere, of what you're telling us in oral argument today. You show it to me, and I'll apologize. We found that Mr. Augustine failed to demonstrate that Mr. Chang's fees were reasonable. And when we say that they're not reasonable, we found that they were tied to claims not before the board. Now, with respect to the claims to mediation, he was given an opportunity to present sufficient evidence to demonstrate that, and he didn't. Right, but I mean, if you read the rationale, if you say, well, the A.J. said, well, to the extent that his fees were not even related to the case, he can't get them. And I don't believe Mr. Chang's going to argue that he's entitled to fees having to do with her driver's license or employment contract or someplace else. But the A.J. wrote an opinion in which he said, as a matter of law, you can't get the fee unless you can prove that your efforts caused the government to cave in. And you've given that up. Thank you. All right. And insofar as that may be applicable as a general principle, there's also the evidentiary problem we have in this case, which is Mr. Chang, after the show cause order, was given the opportunity to show what hours were connected to the success of the EPA. But he did show, did he not, that he spent hours, for example, on the objection to the agency's motion to withdraw. And he was denied those fees. Those hours – Why isn't that like writing the appellate brief? Those hours – actually, there's a specific problem with that, which is he actually opposed the motion to dismiss, not on the grounds that I'm concerned that my client will not get reviewed, but because I want you to make changes in how you interpret veterans' preferences on a much broader basis. Well, he was defending the A.J.'s original decision, wasn't he? He was talking about changes to the – No, he was also talking about changes, but basically the opposition was defending the original decision. And what the Veterans Administration did was to say, well, we give up, and giving up would leave the board decision that had vacated the original administrative judge's decision. And what Mr. Chang was saying is, you know, this isn't right. I'm entitled to have that – if you're giving up, I'm entitled to have that A.J. decision reinstated. So there's a legal obligation under the Veterans Administration to comply with that decision. I was a little confused by that back and forth, because on page 209 of the record, in the motion to dismiss, which was filed on, I believe, November 18, 2001, the agency said, we expect – we also note that because dismissal – Where are you on 209? Benefits the initial decision. On 209, where are you? What page? It is the last full paragraph in the last sentence. Further? We note also that because dismissal would provide appellant the benefits of the initial decision, and she has not petitioned for its review, it does not appear that dismissal would adversely affect appellant's rights. Yeah, but look at page 63. In response to his pleading, the board says her objection appears to be based on her belief that the withdrawal of the agency's petition for review will result in the initial decision remaining vacated. And they do exactly what he asks, and they reinstate the original decision. So as part of that board decision, he got additional relief. He got the thing reinstated. He's claiming – he's claiming the fees he incurred – she's claiming the fees that he incurred in achieving that successful result. That is the reinstatement of the original decision. How can you possibly oppose the recovery of those fees? We don't think that – well, I guess there's a difference in terms of the legal effect of the dismissal. The board's expectation at the time was, in fact, that would not result in her not getting relief, but in fact getting all the relief that she ultimately got. Instead, Ms. Augustine opposed that dismissal and sought changes to it. Wait, wait. You're not addressing my question. On page 64, the board says, we vacate the board's order and opinion. That is, vacate the one that originally vacated the A.J.'s decision. The effect of this is to reinstate the A.J.'s decision, right? Yes, it is. And he successfully argued for that result, right? It followed the brief, but that wasn't the result he was arguing for. He wasn't arguing for the reinstatement of the decision? No, he was arguing for changes to the decisions. Well, he was arguing for that, too, but he was also defending the original A.J. decision, wasn't he? He was opposing the motion to dismiss the appeal. His client doesn't get – once the board has vacated the A.J.'s decision, when the board took the case up, his client gets nada. Nothing gets – never gets a penny of her previous award unless either the full board rules in her favor or the full board reinstates the decision that they have vacated. Got it? Yes, Your Honor. Got it. Okay. And so until such a time as the full board, either on its own, ruled in her favor on the merits, which they never did, or they reinstate Reed's A.J. opinion in her favor, she is at jeopardy. She's out of the money. Yes, Your Honor. Got it. Mr. Chang filed a series of pieces of paper saying, don't just dismiss the government's appeal. Make certain my client gets her money. It was based on the record. It appears he actually expected that would happen, and then before he even – Well, the agency may have expected it to happen in Catch-22. The agency doesn't do it. It wouldn't be the first time we saw that go on. But until the board finally reinstated the A.J.'s decision, she was out of the money, out of the money. And if you take what you've done, and I congratulate you for it, you have told us that you no longer defend either rationale used by the A.J. Two of the rationales. One, you filed your appearance too late. You give up on that, don't you? That we found to be only relevant insofar as it was evidence that his fees were not – It can't go to reasonableness. It wasn't the date of the appearance. It can't go to reasonableness. The reasonableness of your fee can't depend on when you filed your notice of appearance, right? No, and we don't think that's what happened. That's gone. You gave that up. And secondly, the notion that you can only have a reasonable fee if you can show that your work caused the government to cave in. You give up on that too. That's not our position. It was your position when you wrote your red brief, but somebody got some religion over there across town before you came over here to face us. Right? Just doing the best we can. Well, under the theory of the A.J., it's fabulous. An employee goes to the board, doesn't get fired, goes to the board, on her own, gets vindicated. The government decides to appeal. The government appeals. She doesn't know what to do. She hires a lawyer. The lawyer charges her a lot of money. The government takes a good look at it and says, Hmm, maybe the lawyer's got something going here. We'll just quit. And so the government says, We throw in a towel. We quit. We dismiss our appeal. Then, in those fact situations, if this case were to stand, no attorney's fees would ever come under this statute. Because you can't prove that the government caved in because of your work. Because when Chang takes your deposition and asks you, Did you cave in because of my good work? You say, Attorney-client privilege. I don't have to answer that. So it's one of the most phenomenal Catch-22s I've seen in years. And I'm glad that the government saw that between the time they filed their red brief and when they came in front of us. So, congratulations. Anything further, Mr. Toda? We think that there were substantial We think that the AG's decision is not arbitrary and capricious. We should vacate and remand for a full hearing on Quantum to sort out exactly which hours were done in defense of her case and which ones weren't. If the court finds that it was not reasonable to award no fee at all, then there should be a remand for the drawing of a proper line for what was on the appeal as opposed to on the other issues. However, we feel that there was reasonable evidence, given that Mr. Chang had the opportunity, after the show of cause order, to show what fees were laid to the appeal. If you could settle the case in 24 hours, you'd probably avoid an opinion. Thank you, Mr. Toda. Anything further? No, Your Honor. Okay, thank you. Mr. Chang? Yes. Is there anything which you would wish to respond to? Yes, I think it's correct that I never advised my client how to get a driver's license, nor have I ever advised my client how to make a Chinese dish, either. Everything I've performed is reasonably related to the work, to the case, in my good faith, professional judgment, as needed. Thank you. Thank you, Mr. Chang. I think that concludes our hearing today. All rise.